UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

A.S., a minor child by and through Parent and Guardian
RACHEL ROSENBAUM,                                        **Civil Action No.:**
                      Plaintiff,

                                                             **COMPLAINT**
          -against-                                      *Jury Trial is Demanded*

THE UNION OF ORTHODOX JEWISH
CONGREGATIONS OF AMERICA, INC.
(A.K.A. THE ORTHODOX UNION); and
YACHAD: THE NATIONAL JEWISH
COUNCIL FOR DISABILITIES,

                      Defendants.
------------------------------------------------------------------------X

       PLAINTIFF, A.S., a minor child by and through Parent and Guardian Rachel Rosenbaum, by and through attorneys at WEINSTEIN & WEINSTEIN, LLP, providing upon information and belief the following Complaint and state and allege as follows:

## PRELIMINARY STATEMENT

    1.    This is a civil action seeking monetary relief, compensatory and punitive damages, disbursements, costs and fees due to the sexual assault Plaintiff suffered as a direct and proximate cause of Defendants collective negligence and gross negligence.

    2.    Specifically, the Plaintiff, a minor with a developmental disability spending the Summer of 2019 under Defendants collective care and supervision, alleges that the Defendants negligently, wantonly, and recklessly did wrongfully ignore and attempt to cover-up the sexual abuse Plaintiff endured at the hands of another camper.

3. Plaintiff alleges that Defendants, their agents, employees and servants acting in gross-negligence were made aware of the sexual abuse Plaintiff was subjected to, and willfully ignored, disregarded, and delayed in reporting said abuse.

4. Plaintiff alleges that as a direct and proximate cause of Defendant gross-negligence, Plaintiff was subjected to continuing sexual assaults by another camper.

5. Defendants were negligent and/or recklessly breached their duties of care and duties to supervise/intervene with respect to the interactions with and treatment of Plaintiff as described herein.

6. Plaintiff further alleges that Defendants were negligent in training, hiring, and supervising its employees, representatives, and/or agents.

7. Further, Plaintiff alleges that Defendants were deliberately indifferent to the need to train its employees.

8. Accordingly, Defendants are liable to the Plaintiff for the sexual abuse Plaintiff suffered; failing to investigate; and failing to punish the actions of the individual employees tasked with overseeing/supervising Plaintiff and other campers.

9. As a result of the Defendants actions and inactions, Plaintiff suffered a violation of body by being sexually abused, severe and continuing emotional harm, for which Plaintiff will need to seek life-long treatment.

## JURISDICTION AND VENUE

10. The jurisdiction of this Court is invoked under 28 U.S.C. § 1332. Completely diversity exists. Plaintiff is a resident of New Jersey; Defendants The Union of Orthodox Jewish Congregations of America, Inc. (A.K.A. the Orthodox Union) (hereinafter the "OU"); Yachad: The National Jewish Council for Disabilities (hereinafter "YACHAD")

are located in the Southern District of New York. The amount in controversy is well in excess of $75,000.00 based on the nature of the claim and the damages caused to Plaintiff.

11. This court is requested to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (b).

12. Venue in the Southern District of New York is proper under 28 U.S.C. § 1391, based on the fact that the principal offices of the OU and YACHAD are located in the Southern District of New York.

## PARTIES

13. Plaintiff, A.S. (hereinafter "PLAINTIFF") is a minor child living with family in New Jersey. Plaintiff has been diagnosed with Autism Spectrum Disorder (hereinafter "ASD"). At all relevant times herein, Plaintiff was only 10 years old.

14. Defendant THE UNION OF ORTHODOX JEWISH CONGREGATIONS OF AMERICA, INC (A.K.A. The Orthodox Union) (the "OU") is one of the largest Orthodox Jewish organizations in the United States. Founded in 1898, the OU supports a network of synagogues, youth programs, Jewish and Religious Zionist advocacy programs, programs for the disabled known as YACHAD, localized religious study programs, and international units with locations in Israel and formerly in Ukraine. The OU maintains a kosher certification service, whose circled-U hechsher symbol, Ⓤ, is found on the labels of many kosher commercial and consumer food products. The OU's principal place of business is 11 Broadway 13th floor, New York, NY 10004.

15. Defendant YACHAD: THE NATIONAL JEWISH COUNCIL FOR DISABILITIES ("YACHAD") is an entity entirely run, funded and housed within the OU. YACHAD is a subdivision of the OU entirely focused on addressing the needs of all Jewish

individuals with disabilities and ensuring their inclusion in every aspect of Jewish life. YACHAD aims to ensure persons with diverse abilities their rightful place within the Jewish community, while helping to educate and advocate for a greater understanding, acceptance, outreach, and a pro-disability attitude as well as providing weekend programs and, as relevant here, summer camp programs.

16.     The OU and YACHAD are collectively referred to as the DEFENDANTS.

## FACTUAL ALLEGATIONS

**Background**

17.     Upon information and belief, YACHAD is wholly run by the OU, with its funding, staffing, and offices provided by the OU as well as its directives.

18.     Upon information and belief, the OU maintains YACHAD's programs and funding as evinced from the OU's own website at https://www.ou.org/departments/njcd-yachad/ (last visited December 16, 2019):



19. YACHAD maintains multiple programs for the summer for individuals with special needs and developmental disabilities. One such program is the Yachad Integration Program.

20. YACHAD's Integration Program advertises that it "provides unique and inclusive sleepaway and day camp programs. Our participants have the support of trained, highly motivated staff and, in a the sleepaway programs, sleep in their own bunkhouse. Each day, on an individual or group basis, they participate in camp activities with other bunks and campers. They enjoy swimming, boating, sports, arts & crafts, drama, learning, and so much more together with their mainstream peers. Our members form special friendships within their bunk, and, more importantly, with other campers throughout the camp. It is a complete camping experience, filled with warmth and care, and a focus on the development of social skills, fostering socialization, friendship, self- esteem and independence within a safe, secure environment." *See* *https://www.yachad.org/summer/programs/yachadintegration* (last visited December 16, 2019).

21. The relevant program PLAINTIFF attended is entitled "Yachad B'Nesher". The Following is the on-line advertisement for Yachad B'Nesher found at https://campnesher.org/programs/yachad-bnesher/ (last visited December 16, 2019):



22. The webpage directs parents/guardians interested in Yachad B'Nesher to contact Nechama Braun, at the Yachad Office at the following e-mail: braunn@ou.org, an e-mail owned and maintained by the OU.

23. It is claimed that YACHAD provides specially trained staff to oversee the campers, however, upon information and belief, theses staff members are merely young volunteers with no true special training and that the OU and YACHAD did not provide proper specialized training appropriate for the oversight of special needs individuals.

24. Upon information and belief, the Yachad B'Nesher summer program is run and paid for via YACHAD and the OU as seen from the following screenshot on the YACHAD webpage https://www.yachad.org/nesher:



25. The cost for the summer at the YACHAD program is $4,200 plus a $250 registration fee.

26. The Yachad B'Nesher program is geared for children ages 8-14.

27. PLAINTIFF comes from an Orthodox Jewish home in New Jersey.

28. PLAINTIFF, who suffers from ASD, has attended YACHAD weekends and previously attended YACHAD's Integration Program housed at Camp Nesher, located in Lakewood, Pennsylvania.

29. In the Summer of 2019, PLAINTIFF's parents had arranged for PLAINTIFF to once again attend Yachad B'Nesher. They did this by filling out an application which, upon information and belief, was created by the OU and YACHAD as well as by paying costs and fees to attend Yachad B'Nesher to the OU via YACHAD.

30. Upon information and belief, employees and staff of Yachad B'Nesher are employees and paid by DEFENDANTS.

31. The Program Director for YACHAD at Camp Nesher was Esther Baum.

32. Upon information and belief, the bunkhouse layout is such that it allows campers and staff/counselors to sleep within the same open space.

**Multiple Sexual Assaults**

33. Upon attending the YACHAD program, PLAINTIFF was sexually assaulted by another male camper (hereinafter the "Camper) within the same bunkhouse. This Camper, who also has a developmental disability, was larger and stronger than PLAINTIFF.

34. Upon information and belief, DEFENDANTS were, or should have been, aware of the Camper's proclivity to engage in improper touching and/or sexual contact, even prior to being warned by PLAINTIFF.

35. At all relevant times PLAINTIFF protested and attempted to prevent said Camper from engaging in the sexual assault, but was overpowered by said Camper because of DEFENDANTS gross negligence.

36. In the first instance, the Camper entered PLAINTIFF's bed at night and groped PLAINTIFF's genitals.

37. After the Camper exited the bed, PLAINTIFF reported the incident to a male YACHAD staffer, who did absolutely nothing about it.

38. As a direct and proximate cause of YACHAD's inaction and negligence, the Camper entered PLAINTIFF's bed two additional times.

39. The second time, once again, the camper entered PLAINTIFF's bed at night and groped PLAINTIFF's genitals.

40. From the late-night of August 5, 2019 to the early morning of August 6, 2019, the second and third assaults occurred.

41.     The Camper entered PLAINTIFF's bed and proceeded to lay on top of PLAINTIFF so that PLAINTIFF was unable to move.  The Camper groped and fully expose his genitalia to PLAINTIFF, manipulating himself and PLAINTIFF.  The Camper also pulled PLAINTIFF's shirt up and kissed PLAINTIFF's face.  Only upon another camper waking up to PLAINTIFF's cries, did the sexual assault stop.

**Continued Negligence**

42.     Upon information and belief, PLAINTIFF's counselor became aware of the third sexual assault at approximately 6:30 A.M. on August 6, 2019, after being told by PLAINTIFF.

43.     Yet, DEFENDANTS allowed the Camper to head to bed in the very same bunk as PLAINTIFF that same night.

44.     DEFENDANTS waited until approximately 10:20 P.M. on August 6, 2019 to inform PLAINTIFF's parents that there was a "slight incident".

45.     In an attempt to cover-up and down-play what had occurred.  DEFENDANTS via the counselor stated in sum and substance to PLAINTIFF's parents via text message "Hi! Sorry for the late text EVERYTHING IS FINE I just wanted to know if you could speak at some point tomorrow. There was a slight incident that happened this morning that I would like to discuss when you have a chance. Aviv and everything is fine just wanted to touch base and let you know that I wanted to speak to you."  PLAINTIFF's mother responded, in sum and substance that "I'm awake if you want to speak" to which the counselor responded with "Tomorrow is better there are just a few things going on now. But I'll call you first thing in the morning!"

46.     PLAINTIFF's parents were not informed of the sexual assault until they insisted upon speaking to a higher-up, which did not occur until approximately 11:20 P.M. on August 6, 2019.

47.     PLAINTIFF's parents learned that the Camper and PLAINTIFF were asleep in the same bunk, and were not separated.  PLAINTIFF's parents insist that the program director Esther Baum stay with PLAINTIFF so that there would not be a fourth incident.  However, it is unknown if the Program Director stayed until morning.

48.     Upon information and belief, the Camper's own parents were not notified about what had occurred until August 7, 2019, after PLAINTIFF's parents made it clear that the sexual assault against PLAINTIFF was unacceptable.

49.     On August 7, 2019, PLAINTIFF's parents spoke with management and came to the camp.  Throughout, DEFENDANTS did not treat the matter with the proper seriousness required of a sexual assault.

50.     Moreover, knowing that PLAINTIFF is extremely concerned with how other's feel, members of YACHAD attempted to guilt PLAINTIFF into staying at the Camp.

51.     This conduct caused PLAINTIFF tremendous additional anxiety over the feeling of letting others down.

52.     However, PLAINTIFF, aware that he was no longer in a safe place, went home with PLAINTIFF's parents.

53.     YACHAD advertises and maintains itself as a safe place for those who suffer from ASD and other developmental disorders.  Nonetheless, DEFENDANTS allowed for the sexual assault of PLAINTIFF, who was under DEFENDANTS supervision, to occur on multiple occasions after PLAINTIFF had initially reported the matter to a staffer.

54. Nothing was done to protect PLAINTIFF after the out-cry was made; PLAINTIFF was still kept with the same Camper throughout the entire day; PLAINTIFF and the sexual abuser were put to bed in the same bunk that very night after the sexual abuse was disclosed with no heightened supervision.

55. Upon information and belief, no police report was made until over 24-hours after the last incident was reported by PLAINTIFF.

56. The resulting trauma of this sexual assault, due to the absolute and actual negligent supervision of PLAINTIFF and other campers by DEFENDANT, has been devastating for PLAINTIFF.

57. PLAINTIFF now has significantly increased anxiety, acute stress, extremely low self-esteem, feelings of worthlessness, heightened fear of letting others down, and has begun to self-harm.

## AS AND FOR A FIRST COUNT
**Negligence**

58. PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 57 of this Complaint with the same force and effect as if fully set forth herein.

59. DEFENDANTS, owed a duty of care to PLAINTIFF as they were acting *in loco parentis*, by running, maintaining, and/or engaging in activities and a camp for which was specifically advertised and geared toward disabled children such as PLAINTIFF.

60. DEFENDANTS knew or should have known about the Camper's proclivity for unwanted touching and/or sexual assault.

61. Upon information and belief, DEFENDANTS never trained or educated their employees regarding any special training needed to properly protect and oversee disabled children.

62. DEFENDANTS breached the duty of care to PLAINTIFF by (a) ignoring PLAINTIFF's report regarding the sexual assault; (b) failing to diligently protect PLAINTIFF from sexual assault; (c) failing to properly supervise the PLAINTIFF and other campers within PLAINTIFF's bunkhouse; (d) failing to address sexual assault after three (3) occurrences; and (e) allowing PLAINTIFF to be sexually assaulted by another camper.

63. DEFENDANTS attempted to cover-up their negligence by ignoring PLAINTIFF; failing to properly and timely inform PLAINTIFF's parents of the sexual assault; and purposefully delaying the filing of a police report.

64. DEFENDANTS acts and omissions directly and proximately resulted in PLAINTIFF suffering multiple sexual assaults; resulting in significant and lasting emotional and mental trauma.

65. Upon information and belief, such injury caused by Defendants requires life-long treatment.

## AS AND FOR A SECOND COUNT
### Negligent Infliction of Emotional Distress

66. PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 65 of this Complaint with the same force and effect as if fully set forth herein.

67. DEFENDANTS, owed a duty of care to PLAINTIFF as they were acting in loco parentis, by running, maintaining, and/or engaging in activities and a camp for which was specifically advertised and geared toward disabled children such as PLAINTIFF.

68. Upon information and belief, DEFENDANTS never trained or educated their employees regarding any special training needed to properly protect and oversee disabled children.

69. DEFENDANTS knew or should have known about the Camper's proclivity for unwanted touching and/or sexual assault.

70. It was foreseeable that an above-described sexual assault was possible with what they knew or should have known about the Camper.

71. DEFENDANTS breached the duty of care to PLAINTIFF by (a) ignoring PLAINTIFF's report regarding the sexual assault; (b) failing to diligently protect PLAINTIFF from sexual assault; (c) failing to properly supervise the PLAINTIFF and other campers within PLAINTIFF's bunkhouse; (d) failing to address sexual assault after three (3) occurrences; and (e) allowing PLAINTIFF to be sexually assaulted by another camper.

72. Moreover, DEFENDANTS, via their agents and/or employees specifically pressured PLAINTIFF to stay at the location after the sexual assault, resulting in additional emotional suffering to Plaintiff.

73. DEFENDANTS acts and omissions directly and proximately resulted in PLAINTIFF suffering multiple sexual assaults; resulting in significant and lasting emotional and mental trauma.

74. Upon information and belief, such injury caused by Defendants requires life-long treatment.

## AS AND FOR A THIRD COUNT
### Vicarious Liability

75. The PLAINTIFF repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint with the same force and effect as though fully set forth herein.

76. DEFENDANTS, owed a duty of care to PLAINTIFF as they were acting *in loco parentis*, by running, maintaining, and/or engaging in activities and a camp for which was specifically advertised and geared toward disabled children such as PLAINTIFF.

77. Upon information and belief, DEFENDANTS never trained or educated their employees regarding any special training needed to properly protect and oversee disabled children.

78. DEFENDANTS knew or should have known about the Camper's proclivity for unwanted touching and/or sexual assault.

79. It was foreseeable to DEFENDANTS and their employees that an above-described sexual assault was possible what they knew or should have known about the Camper.

80. DEFENDANTS breached the duty of care to PLAINTIFF by (a) ignoring PLAINTIFF's report regarding the sexual assault; (b) failing to diligently protect PLAINTIFF from sexual assault; (c) failing to properly supervise the PLAINTIFF and other campers within PLAINTIFF's bunkhouse; (d) failing to address sexual assault after three (3) occurrences; and (e) allowing PLAINTIFF to be sexually assaulted by another camper.

81. Moreover, DEFENDANTS, via their agents and/or employees specifically pressured PLAINTIFF to stay at the location after the sexual assault, resulting in additional emotional suffering to Plaintiff.

82. DEFENDANTS acts and omissions directly and proximately resulted in PLAINTIFF suffering multiple sexual assaults; resulting in significant and lasting emotional and mental trauma.

83. Upon information and belief, such injury caused by Defendants requires life-long treatment.

## PUNITIVE DAMAGES

84. The PLAINTIFF repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 83 of this Complaint with the same force and effect as though fully set forth herein.

85. DEFENDANTS advertise and claim specialty programs for disabled and special needs children, yet provide their staff with insufficient training.

86. DEFENDANTS knew about the sexual assaults occurring to PLAINTIFF, an ASD child in their care. and did nothing. Moreover, DEFENDANTS would have continued to do nothing but for PLAINTIFF's parents becoming involved to prevent further sexual assaults upon PLAINTIFF.

87. DEFENDANTS attempted to cover-up their negligence by ignoring PLAINTIFF; failing to properly and timely inform PLAINTIFF's parents of the sexual assault; and purposefully delaying the filing of a police report.

88. The acts of the DEFENDANTS were negligent, without regard for PLAINTIFF's wellbeing, and were based on a lack of concern for PLAINTIFF.

DEFENDANTS lack of training of their employees and/or agents directly resulting in PLAINTIFF's harm.  Such acts omissions therefore deserve an award of punitive damages.

**WHEREFORE**, PLAINTIFF demands judgment against DEFENDANTS:

    a.    Special and Compensatory Damages;

    b.    Punitive Damages;

    c.    Award costs of this action including attorney's fees to the PLAINTIFF; and

    d.    An order granting such other legal and equitable relief as the court deems just and proper,

### A JURY TRIAL IS HEREBY DEMANDED.

Pursuant to Fed. R. Civ. P. 38, PLAINTIFF hereby requests a trial by jury for all issues so triable.

Dated:    December 17, 2019
            Flushing, New York

                        Respectfully Submitted,

                        **Weinstein & Weinstein, LLP**
                        *Attorneys for Plaintiff*

By:    _____/s_____
        **JACOB Z. WEINSTEIN, ESQ.** (JW6133)
        **ISRAEL D. WEINSTEIN, ESQ.** (IW6133)
        68-15 Main Street, 2nd Floor
        Flushing, NY 11367
        TELEPHONE: (646) 450-3484
        FACSIMILE: (646) 774-0368
        E-MAIL: Jacob@WeinsteinLLP.com